IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| STEVEN K. BAUGHMAN, #02180609 | § | |
| VS. | § | CIVIL ACTION NO. 6:20cv560 |
| JIMMY BOWMAN, ET AL. | § | |

REPORT AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE

Plaintiff Steven Kurt Baughman, a prisoner formerly confined at the Powledge Unit within the Texas Department of Criminal Justice (TDCJ), proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit complaining of alleged violations of his constitutional rights occurring at the Powledge Unit. The case was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Baughman is suing (1) Jimmy Bowman, Warden, (2) Vernon Mitchell, Assistant Warden, (3) Bryan Collier, Executive Director of TDCJ, (4) Lorie Davis, former Director, (5) Texas Board of Criminal Justice (TBCJ), (6) TDCJ, (7) Krystal Poe, Officer, (8) Betty Reeves, Officer, (9) Yolanda Ellis, Officer, (10) Karen Clakley, Officer, (11) Ronnie Stanhope, Lieutenant, and (12) Melissa Ballard, RN.

By previous order, the Court dismissed, with prejudice, Baughman's claims concerning alleged medical deliberate indifference to his serious medical needs, retaliation, and property loss, (Dkt. #101). The present Report concerns only Baughman's excessive or "misuse of force," ADA, and heat claims. For reasons explained below, the Court recommends that Baughman's "misuse of force" be dismissed for the failure to state a claim upon which relief may be granted. The Court further recommends that Defendants' motion for summary judgment, (Dkt. #104), be granted and that the remaining claims in this lawsuit be dismissed with prejudice.

## I. Baughman's Claims—Amended Complaint

As previously explained, the operative pleading in this lawsuit is Baughman's amended complaint, (Dkt. #13). An amended complaint entirely supersedes and takes the place of the original complaint. *See Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736 (5th Cir. 1986). Baughman generalizes the factual allegations as follows:

> Plaintiff's suit arises in part from the appalling and extreme conditions that Plaintiff and similarly situated suffer each summer as a result of the extreme heat in the inmate housing areas of Powledge, and the substantial serious harm, including permanent injury and death, to which these conditions expose them. Plaintiff has no way to alleviate these conditions himself, and what little means Defendants make available to Plaintiff does little or nothing to alleviate the extreme heat conditions that Plaintiff suffers.

(Dkt. #13, pg. 11). He explains that most prisoners assigned to Powledge are minimum custody prisoners serving time for non-violent offenses. Powledge began operations in 1982 and has a maximum capacity of 1,400 prisoners. The Unit is a medical facility and houses geriatric prisoners, prisoners with disabilities, and prisoners with chronic medical problems.

### a. Misuse of Force/Excessive Force

Baughman contends that Defendant Bingham employed "misuse of force," or excessive force on him through the use of "excessively tight restraints," or small handcuffs which resulted in pain and nerve damage to his wrists. Specifically, he maintains that on September 18, 2020, he was placed in administrative segregation after testing positive for COVID-19. He explains that he is diabetic and obese—and that he must receive insulin daily, (Dkt. #13, pg. 24). Because all prisoners housed in administrative segregation must be escorted when leaving their cells, Baughman "had to be removed from his cell in segregation" to receive his daily insulin. *Id.*

He further explains that "prior to removing prisoners from segregation cells," the prisoners must be handcuffed. TDCJ utilizes two sizes of handcuffs, "regular and large or shackles," as well as "zip-tie cuffs," (Dkt. #13, pg. 24). Baughman stresses that the "regular handcuffs do not fit"

2

him because of his size and that TDCJ policy requires handcuffs "not to be placed on a prisoner in a fashion in which 2 fingers can't be [inserted] between the cuffs and the prisoners' wrist without the cuffs cutting off circulation." *Id*.

Baughman claims that Defendant Bingham "used the regular cuffs on Plaintiff and used them in a manner that was malicious, sadistic and intended to cause harm" when Bingham witnessed the hinge and clasp were "cutting into the back, sides, and bottom of Plaintiff's wrists on September 18, 2020." *Id*. He states that he "complained to Defendant Bingham, on September 18, 2020, that the cuffs were too small" and that other officers "always used the large cuffs or shortened shackles" on his wrists. Baughman insists that the tight restraints "bit into the bone," cut off circulation, and caused pain—but Bingham remarked that "she didn't care" and that he would be placed in the regular handcuffs when taken out of his cell to get insulin "or he would not get insulin." *Id*. He further asserts that Bingham ordered other officers "not to use the large cuffs or shackles" on him when taking him out of the cell.

Bingham escorted Baughman to receive his insulin in the Lieutenant's Office. According to Baughman, he complained to Lieutenants Carper and Sims "about the cuffs being too tight," and they merely "gave tacit authorization" to Bingham's "illegal use of restraints," but refused to intervene.

Subsequently, on September 21, 2020, Lieutenant Crist "put a stop to the excessive force and excessively tight restraints" upon seeing him in regular cuffs in her office. Baughman insists that they were "visibly too tight," and medical officials then issued a "special cuff pass" for Baughman, which states "No cuff to arm. Use plastic cuffs or leg irons." *Id*. at pg. 25. Baughman asserts that he was injured from Defendant Bingham's use of force, as his "left wrist and hand were damaged [nerve damage] and [he] lost feeling/sensation in his little finger and two fingers

next to the little finger" which will affect him in the future because he is a jeweler and must "have full use of his hands." *Id*.

### b. Heat, ADA, and RA Claims

Baughman also maintains that Defendants violated his Eighth and Fourteenth Amendment rights by subjecting him to extreme conditions of confinement through excessive/extreme heat. He states that Defendants Collier, Davis, Texas Board of Criminal Justice, TDCJ, and Bowman chose "to expose [him] and other prisoners to high apparent [temperatures] inside the housing areas, and unnecessarily caused [him] pain, suffering, and mental anguish," (Dkt. #13, pg. 16). Baughman insists that the high indoor temperatures inside the Powledge Unit "pose an unreasonable risk to [his] future health." *Id*. Baughman focuses his claims on heat in the prisoner housing areas.

Moreover, Baughman maintains that Defendants violated the ADA and RA by failing to accommodate his heat-sensitive disabilities. Specifically, he states that he is a "qualified individual regarded as having a physiological or mental impairment that substantially limits one or more of his major life activities and/or bodily functions," and that because he suffers from diabetes, hypertension, obesity, COPD, and asthma, he has a greater risk of death from the heat. He claims that he is qualified to participate in programs and activities within TDCJ facilities—such as incarceration within the inmate housing areas. He claims, however, that Defendants "intentionally discriminated against him by failing to reasonably modify its facilities to accommodate his disabilities"—seeking damages and an injunction ordering "Defendants to maintain a heat index of 88 degrees Fahrenheit or lower inside each of the Powledge Unit's housing areas and inmate dining room." *Id*. at pg. 17.

Baughman further asserts that Defendants failed to reasonably accommodate prisoners who are dependent upon a wheelchair. Specifically, he contends that the waiting room of the Powledge

Unit's Medical Department "provides seating for approximately 20 able-bodied prisoners, but only provides space for 1 wheelchair-dependent prisoner at a time," which results in discrimination. Baughman insists that the "1 wheelchair at a time rule" demonstrates intentional discrimination.

Finally, Baughman argues that the lack of handicapped or wheelchair-dependent showers for prisoners housed in segregation also illustrates discrimination. Specifically, he highlights that he was denied a shower from September 17, 2020, through September 24, 2020 (eight days total) while he was housed in administrative segregation because there "is no wheelchair-accessible handicapped shower in the shower-room of the Powledge Unit" and a grievance investigator informed him that "the court cannot make us put ADA compliant showers in administrative segregation." *Id*. Baughman insists that he was harmed by Defendants "where he was denied a shower for 8 days while sick with COVID-19 and required the ability to bathe and maintain personal hygiene." *Id*. He claims that he was denied showers because of his disability.

## II. Defendants' Motion for Summary Judgment

Defendants assert, (Dkt. #104), that they are entitled to summary judgment on Baughman's heat/ADA claims because Baughman lacks standing for his claims for injunctive relief. They also maintain that Baughman's claims regarding excessive heat fail because he merely speculates injury. Defendants further contend that TDCJ's heat mitigation strategies demonstrate that Baughman's claims are without merit, particularly because his medical records do not indicate that he suffers from heat-related sensitivities. Finally, Defendants assert that the evidence fails to show that they discriminated against Baughman and that they are entitled to qualified immunity.

## III. Summary Judgment Evidence

Defendants attached several exhibits in support of their motion:

**Exhibit A**:    Dr. Adams' Excerpts, *Martinez* Report,

5

**Exhibit B**:    Correctional Managed Health Care Policy Manual Number G-51.9, with supporting business records affidavit,

**Exhibit C**:    TDCJ Policy AD-10.64 (rev. 9), "Excessive Temperature Conditions in the TDCJ," with supporting business records affidavit, and

**Exhibit D**:    Baughman's Health Summary for Classification, with supporting business records affidavit.

## IV. Legal Standards

A court shall grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P.  In determining whether there is a genuine dispute of a material fact, the court must examine the evidence and inferences drawn therefrom in the light most favorable to the nonmoving party.  *See S.E.C. v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1994). Summary judgment is appropriate "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."  *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). "Material facts are those that might affect the outcome of the suit under the governing law." *Crostley v. Lamar Cnty., Tex.*, 717 F.3d 410, 422 (5th Cir. 2019) (internal citation and quotations omitted).

The Fifth Circuit has held that summary judgment disposition is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions.  *See Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987).  It is not the function of the trial judge—in ruling on a motion for summary judgment—to weigh the evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence.  *Id*. at 567 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

If the movant satisfies its initial burden of demonstrating the absence of a material fact dispute, then the non-movant must identify specific evidence in the summary judgment record

demonstrating that there is a material fact dispute concerning the essential elements of its case for which it will bear the burden of proof at trial. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The non-movant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Util., Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988).

To carry this burden, the non-movant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). All reasonable inferences are drawn in favor of the non-moving party, but the non-moving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only "a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007); *Miller v. Graham*, 447 F. App'x 549, 551 (5th Cir. 2011); *Chacon v. York*, 434 F. App'x 330, 332 (5th Cir. 2011). "Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation" will not survive summary judgment. *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016). Rather, the non-movant "must point to specific evidence in the record demonstrating a material fact issue" at the summary judgment stage. *See Mitchell v. Mills*, 895 F.3d 365, 270 (5th Cir. 2018). The non-movant cannot rest upon mere allegations or "denials of the adverse party's pleading." *See U.S. v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001).

When qualified immunity is invoked, as is here, "only evidence—not argument, not facts in the complaint—will satisfy" the burden of proof necessary to defeat summary judgment. *See Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) (internal citation omitted). Once the movant asserts immunity, the burden then shifts to the plaintiff to rebut it with more than

7

conclusory allegations, unsubstantiated assertions, or speculation. *See Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003); *see also Miller v. Graham*, 447 F. App'x 549, 551 (5th Cir. 2011) ("Miller has not overcome Graham's assertion of qualified immunity because he presented nothing but conclusory allegations and unsubstantiated assertions to assert his claim").

## VI. Discussion and Analysis

With respect to Baughman's claim of "misuse of force," the Court determines that such claim fails to state a claim upon which relief may be granted. Moreover, a review of the summary judgment evidence, viewed in the light most favorable to Baughman, demonstrates that the evidence before the Court could not lead to different factual findings and conclusions. Because there are no genuine issues of material fact on his heat and ADA claims, Defendants' motion should be granted.

### A. Excessive Force Under the Eighth Amendment

The Court understands that Baughman maintains that Defendant Bingham employed excessive force upon him by knowingly placing excessively tight handcuffs on his wrists, causing pain and nerve damage. This claim is without merit.

It is well-established that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment. *See Hudson v. McMillian*, 503 U.S. 1, 4 (1992). Because prison officials, when confronted with prison disturbances, have the difficult job of balancing the need to maintain and restore discipline, the core question in determining whether the force used against an inmate was applied in a good-faith effort to maintain or restore discipline inside the prison or, conversely, whether the force was applied maliciously and sadistically, for the very purpose of causing harm. *Id.* at 7; *see also Whitley v. Albers*, 475 U.S. 312, 320 (1986) ("But, in making and carrying out decisions involving the use of force to restore order in the face of a prison

disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used.").

With those concerns at the forefront, the Supreme Court held that in determining whether a prison official acted maliciously or sadistically to cause an unnecessary and wanton infliction of pain, courts should consider: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7; *see also Baldwin v. Stadler*, 137 F.3d 836, 839 (5th Cir. 1998). Each factor is neither exclusive nor determinative, as each case must be judged on its own facts. *Baldwin*, 137 F.3d at 839. To support a claim for excessive force, a prisoner "must have suffered from the excessive force a more than *de minimis* physical injury, but there is no categorical requirement that the physical injury be significant, serious, or more than minor." *See Pesina v. Cooper*, 2010 WL 430001, at *4 (S.D. Tex. Feb. 4, 2010).

The use of restraints for punitive purposes is violative of the Constitution. *See Dominguez v. Moore*, 149 F. App'x 281, 284 (5th Cir. 2005); *Fulford v. King*, 692 F.2d 11, 14-15 (5th Cir. 1982) (holding that the Eighth Amendment is implicated when handcuffs or restraints are used to subject a prisoner to "great pain" either "deliberately, as punishment, or mindlessly, with indifference to the prisoner's humanity.").

But handcuffing a plaintiff—without more—does not offend the Constitution. *See Templeton v. Jarmillo*, 28 F.4th 618, 622 (5th Cir. 2022) ("Tight handcuffing alone, even where a detainee sustains minor injuries, does not present an excessive force claim."); *see also Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). Minor, "incidental injuries that occur in

connection with the use of handcuffs to effectuate an arrest" and, for example, "acute contusions of the wrist and [a] psychological injury from being handcuffed" do not give rise to a constitutional claim for excessive force. *See Pesina*, 2010 WL 43001, at *4 (quoting *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005)); *see also Freeman v. Gore*, 483 F.3d 404 416-417 (5th Cir. 2007) (finding that plaintiff's allegations that deputies twisted her arms behind her back while handcuffing her, applied the handcuffs too tightly, causing "bruises and marks on her wrists and arms," as alleging only *de minimis* injuries).

While *Freeman*, *Tarver*, and *Glenn* were cases involving the Fourth rather than the Eight Amendment, the analysis remains the same. *See Ikerd v. Blair*, 101 F.3d 430, 434 n.9 (5th Cir. 1996) ("[A]ny force exerted by a law enforcement officer that would be objectively reasonable under [the Fourth Amendment] would also be de minimis under Hudson. Similarly, any force that would be objectively unreasonable under [the Fourth Amendment] would not fall within the de minimis language in Hudson."). In other words, a claim concerning excessive force is analyzed in the same fashion whether raised under the Fourth or Eighth Amendment.

Here, Baughman describes several isolated incidents—spanning a few days, from September 18, 2020, through September 21, 2020—wherein his wrists were handcuffed too tight. Contrary to Baughman's contentions, he was not diagnosed with nerve damage.  A prisoner's self-diagnosis alone will not support a medical conclusion.  *See Kayser v. Caspari*, 16 F.3d 280, 281 (5th Cir. 1994); *Swyck v. Davis*, 2017 WL 4155364, at *7 (S.D. Tex. Aug. 21, 2017) (citing *Kayser* and finding that no genuine issue of material fact existed as to "whether Plaintiff faced a substantial risk of serious harm in that Plaintiff's claim of being poisoned was unsubstantiated and, in fact, controverted by the objective medical records."). Rather, the evidence shows that he suffers from gout to his left wrist.

10

Specifically, in a grievance received by Powledge officials on September 28, 2020, Baughman maintained that the handcuffs caused nerve damage and that he needed "a referral to the neurologist at HG for evaluation of the nerve damage," (Dkt. #52, pg. 848). A medical official evaluated Baughman on November 20, 2020, after he complained of pain to his wrist, and ordered an X-ray of his left wrist. *Id*. at pg. 868. The X-ray revealed "no evidence for acute fracture, subluxation or destructive osseous lesion. No significant soft tissue swelling or radiopaque foreign body is identified" and "no acute osseous abnormality of the left wrist is identified," and medical officials diagnosed Baughman with gout. *Id*. at pg. 868; 871. Dr. Adams explains that X-rays and physical examinations of Baughman's left wrist and hand "are without overt pathology," (Dkt. #52, pg. 16). Baughman's voluminous medical records are devoid of indications of nerve damage—and Baughman does not point to a single piece of competent summary judgment evidence to the contrary.

Defendant Bingham's handcuffing Baughman too tight on several isolated incidents between September 18-21, 2020, does not give rise to a constitutional violation of excessive force. While the medical records show that Baughman suffered from gout in his left wrist, he does not connect the gout to the handcuffing incidents—and, more importantly, such a minor, incidental, and *de minimis* injury does not show an Eighth Amendment violation. This is not a case where a plaintiff suffered permanent injuries, bruises, or even "acute contusions" from handcuffing. *See Walcotte v. Wicks*, 2009 WL 1373601, at *4 (S.D. Tex. May 15, 2009) (holding that a plaintiff established an excessive force claim where the injuries caused handcuffing were permanent) (citing *Dominguez*, 149 F. App'x at 281). Baughman describes brief, isolated incidents of handcuffing upon being escorted—as he was quickly issued a special cuff pass after he complained about the tight restraints. *See Heitschmidt v. City of Houston*, 161 F.3d 834 (5th Cir. 1998)

(describing a case wherein the plaintiff was painfully handcuffed for "over for hours"). Because handcuffing—without more—does not establish a constitutional violation for excessive force, Baughman's claims against Defendant Bingham should be dismissed with prejudice.

      B. Baughman's Heat and ADA Claims

Next, Baughman argues that Defendants violated his rights under the Eighth Amendment through excessive heat. He also maintains that Defendants violated the Americans with Disabilities Act (ADA) by failing to accommodate (1) lower temperatures inside the prison, (2) a wheel-chair accessible waiting room in the medical department, and (3) handicap/wheelchair-accessible showers in administrative segregation. Baughman contends that Defendants intentionally discriminate against him.

*1. Heat and the Eighth Amendment*

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" on convicted criminals and extends to deprivations suffered during imprisonment. *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016). The Amendment encompasses "reasonable safety," which includes the protection against "unsafe conditions that pose an unreasonable risk of serious damage [to the inmate's] future health." *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 33 (1993)).

To establish an Eighth Amendment violation in this context, a prisoner must show that the alleged deprivation posed a "substantial risk of serious harm" and that the defendant acted or failed to act with deliberate indifference to the risk. *See Farmer v. Brennan*, 511 U.S. 824, 834 (1994). A prisoner must show that defendants acted in a manner that "shocks the conscience"; in other words, "the court must assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Legate*, 822 F.3d at 210 (quoting *Helling*, 509 U.S. at 36).

12

The Court of Appeals for the Fifth Circuit has held that whether a risk is "substantial" and whether the threatened harm is serious presents an objective test—and whether prison officials consciously disregarded the risk of harm presents a subjective test. *See Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015). To satisfy the objective component, a prisoner must show an "objectively intolerable risk of harm." *Douthit v. Collier*, 2022 WL 5240152, at *3 (5th Cir. Oct. 5, 2022). Under the subjective component, moreover, the charged officials must act with a sufficiently culpable state of mind. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1981).

If the prison officials involved acted with deliberate indifference to the prisoner's health or safety, they may be culpable; however, the deliberate indifference standard is extremely difficult to meet. *Farmer* 511 U.S. 825 at 835; *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006). An official acts with deliberate indifference only if he knows prisoner's face a substantial risk of serious bodily harm *and* he disregards that risk by failing to take measures to abate it. *Gobert*, 463 F.3d at 346. It is well-settled that deliberate indifference cannot be inferred from negligent or even a grossly negligent response to a substantial risk of harm; rather, "it requires a showing of wanton disregard for the prisoners' safety or recklessness." *See Valentine v. Collier*, 993 F.3d 270, 281 (5th Cir. 2021).

Here, accordingly, this Court's inquiry centers on whether Defendants "recklessly disregarded the risk" of extremely hot temperatures at the Powledge Unit. The uncontested summary judgment evidence reveals that Defendants employ extensive heat-mitigation strategies and procedures at the Powledge Unit, thereby refuting any argument that Defendants consciously disregarded a risk to Baughman's health and safety. Further, Baughman shows no injuries stemming from excessive temperatures—other than his concern that the heat exacerbates his medical conditions, (Dkt. #13, pg. 15).

As an initial matter, Baughman is no longer imprisoned at the Powledge Unit. He has been transferred to the LeBlanc Unit. The removal of a prisoner from a prison facility, whether by transfer or release, generally renders the prisoner's claims for injunctive relief for the conditions at that facility moot. *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001). Because Baughman is no longer housed at the Powledge Unit, generally, his requests for injunctive relief are now moot. *See, e.g.*, *Johnson v. Livingston*, 779 F. App'x 254, 255 (5th Cir. 2019) (Mem) (unpublished) ("After Johnson filed his complaint, he was transferred from the Eastham Unit to the Stringfellow Unit. Johnson's transfer mooted his claim for declaratory and injunctive relief."); *Morgan v. Patterson*, 772 F. App'x 117, 118 (5th Cir. 2019) (Mem) (unpublished) (finding that Morgan's transfer and then subsequent release from confinement mooted his claims for injunctive and declaratory relief).

### a. Air Conditioning and Prison

Baughman seeks a Court order directing prison officials to "house" him and other prisoners in "climate-controlled conditions or transferring them to climate-controlled facilities," (Dkt. #13, pg. 15). His requests are essentially ones seeking housing with air conditioning. The Fifth Circuit has held that the Eighth Amendment "guarantees inmates a right to be free from exposure to extremely dangerous temperatures without adequate remedial measures." *Yates v. Collier*, 868 F.3d 354, 360 (5th Cir. 2017).

However, the Fifth Circuit has repeatedly rejected the notion that the Eighth Amendment requires air-conditioned prisons. The Court repeatedly declined to establish any maximum temperate levels or requirements. *See Ball v. Leblanc*, 792 F.3d 584, 599 (5th Cir. 2015) (holding that a district court's injunction ordering air conditioning violated the PLRA because it "was unnecessary to correct the Eighth Amendment violation," as plaintiff's are not entitled to the most

effective available remedy.); *Blackmon v. Garza*, 484 F. App'x 866, 872 n.6 (5th Cir. 2012) (explaining that "we do not suggest that air conditioning is mandatory to meet the requirements of the Eighth Amendment."); *Gates v. Cook*, 376 F.3d 323, 339 (5th Cir. 2004).

*Ball v. LeBlanc* is instructive. The district court in that case issued a permanent injunction requiring the state to lower temperatures inside the prison to 88 degrees Fahrenheit, which could only be achieved through air conditioning. *Ball*, 792 F.3d at 598. In reversing the district court, the Fifth Circuit held that the injunction violated the PLRA (Prison Litigation Reform Act) because the injunction was overbroad for a variety of reasons. First, the Fifth Circuit reasoned that prisoners—under the PLRA—are not entitled to the most effective available remedy, but, rather, are "entitled to a remedy that eliminates the constitutional injury." *Id*. at 599; *see also Rasho v. Jeffreys*, 22 F.4th 703, 713 (7th Cir. 2022) (explaining that "the Eighth Amendment does not require the most effective solution."). The Fifth Circuit in *Ball* expressly held that air conditioning is not necessary to correct the Eighth Amendment violation.

Relevant here, the Fifth Circuit further explained that the Constitution does not require the elimination of all risks related to heat illnesses. *Ball*, 792 F.3d at 599 ("Some risk is permissible and perhaps unavoidable."). The Fifth Circuit highlighted how the plaintiff's own expert explained that there were many acceptable remedies short of prison-wide air conditioning—such as diverting cool air, allowing prisoners to access air-conditioned areas, allowing access to cool showers at least once a day, providing ample supply of cold water and ice at all times, supplying personal ice containers and personal fans, and installing additional ice machines. *Id*. The Court reasoned that such remedies "are precisely the types of remedies this court endorsed in *Gates v. Cook* and that the PLRA requires." *Id*.

The Fifth Circuit further found the injunction problematic because "it awarded relief facility-wide." *Id*. By ordering air conditioning through the prison unit, the district court provided an overbroad remedy—when a more appropriate remedy would be tailored to the individual plaintiffs.

Finally, the Fifth Circuit reversed the district court's permanent injunction because the district court failed to consider or order remedial measures of the type mentioned above in *Gates*. The *Gates* court required particular heat measures that included fans, ice water, ice, and showers "if the heat index reaches 90 degrees or above." *Id*. at 600 (citing *Gates*, 376 F.3d at 336). The Fifth Circuit held that even assuming that air conditioning was an acceptable remedy—which it expressly stated was not—the permanent injunction at issue was too broad when narrower relief, as in *Gates*, was appropriate. *Id*.

Here, Baughman's request—climate-controlled housing and facilities—is similarly problematic. Injunctive relief of this sort would run afoul *Gates* and the Fifth Circuit's rejection of the injunction in *Ball*. Moreover, the uncontested summary judgment evidence reveals that prison officials at the Powledge Unit employ various heat-mitigation procedures similar to those in *Gates*, such as (1) providing all prisoners with a fan, (2) allowing cool-down showers, (3) providing ice water, (4) allowing access to respite areas with air conditioning, (5) recirculating air, and (6) permission to wear T-shirts and carry cooling towels. These mitigation strategies and procedures satisfy the Eighth Amendment, and Baughman failed to show that he is entitled to more extensive measures to combat the heat—including air conditioning.

Baughman's heat claims mirror those found in *Cole v. Collier*, No. 14-cv-1698 (S.D. Tex., Ellison, J.). In *Cole*, which involved TDCJ's Pack Unit, prisoners formed a class action seeking injunctive relief from exposure to extreme heat. *See Sain v. Collier*, 2019 WL 4144321, at *5 (S.D.

16

Tex. Aug. 30, 2019) (outlining the history, claims, and evidence presented in the *Cole* case). The general class consisted of "all inmates who currently are, or in the future will be, incarcerated at the Pack Unit, and who are subjected to TDCJ's policy and practice of failing to regulate high indoor heat index temperatures in the housing areas." *Id*. The parties engaged in mediation and reached a settlement agreement—in which TDCJ agreed to install air conditioning in the housing units where the class members resided and to maintain indoor heat indices at or below 88 degrees Fahrenheit between April 15 and October 15 each year. *Id*. at *6. Under the terms of the agreement, TDCJ plans to construct and install permanent air conditioning at the Pack Unit.

Baughman's case here is not analogous to *Cole*. Injunctive relief was entered in *Cole* based on "an extensive factual record and was specifically tailored to conditions at the Pack Unit and the inmates' medical conditions." *See Taylor v. Collier*, 2019 WL 1383021, at *7 (S.D. Tex. Mar. 26, 2019). The uncontested summary judgment evidence here does not illustrate that current conditions at the Powledge Unit mirror the conditions previously found at the Pack Unit in 2017. Baughman, in the wake of the *Cole* settlement, has not shown that TDCJ's heat mitigation program has been insufficient to reduce the risks of heat illness. *Sain*, 2019 WL 4144321, at *23 ("While the court does not ignore the evidence presented and the findings made in the *Cole* case, it looks primarily at whether the plaintiffs have presented evidence showing that efforts to implement improvements to TDCJ's heat mitigation program in the wake of the *Cole* settlement have been effective to reduce the serious risk of harm posed by extreme heat."). Baughman's request for climate-controlled housing and prison facilities is plainly without merit.

*b. Objective Component: Exposure to Substantial Risk of Harm*

The uncontested summary judgment evidence here reveals that TDCJ officials have developed and implement vast heat-mitigation strategies and procedures at the Powledge Unit,

which is revealed in both the 2018 Administrative Directive 10.64 and Ms. Adams's affidavit. Among several other measures, prison officials at the Unit monitor the temperatures, both inside and outside the prison, document heat-related illnesses, evaluate the medical needs of individual prisoners by giving them a "Heat Sensitivity Score," and perform wellness checks. *See Sain*, 2019 WL 4144321, at \*16 (explaining that TDCJ maintains a "process to place certain offenders who may be at increased risk of developing heat-stress illness in air-conditioned housing by assigning every offender in the TDCJ system … a Heat Sensitivity Score based on their medical conditions and prescribed medications.").

Other than self-serving assertions, Baughman provides no evidence to even suggest that such heat-mitigation measures and requirements in AD-10.64 are insufficient to reduce heat-related illnesses or constitutionally deficient. *See Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013) ("Self-serving allegations are not the type of significant probative evidence required to defeat summary judgment.").  Accordingly, Baughman has not met the objective component for an Eighth Amendment violation.

### c. Subjective Component: Deliberate Indifference

Baughman must demonstrate that prison officials knew of and disregarded an excessive risk to his health or safety; the official must be aware of facts from which the inference can be drawn that a substantial risk of harm exists—and he must also draw the inference. *Valentine*, 993 F.3d at 281; *Farmer*, 511 U.S. at 837. In other words, he must show that the Defendants had subjective knowledge that he faced a substantial risk of harm and then disregarded that risk. *Id.* Actions by prison officials that are "merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Hernandez ex rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 883 (5th Cir.

2004). The failure to alleviate a significant risk that the official should have perceived—but did not—also does not constitute deliberate indifference. *Farmer*, 511 U.S. at 836-40.

While the summary judgment evidence here illustrates that Defendants and prison officials knew about the extremely hot temperatures, as evidenced by the implementation of extensive heat-mitigation strategies throughout the Powledge Unit, the evidence also shows that Defendants did not disregard a substantial risk of harm to Baughman's health and safety. As mentioned, the heat-mitigation strategies employed by prison officials at the Unit are extensive, and refute any claim that Defendants intentionally disregarded the risks of hot temperatures.

Baughman complains mostly of his housing assignment. First, a prisoner does not have a constitutionally protected right to choose his housing. *See Poree v. Akwitti*, 834 F. App'x 934, 935 (5th Cir. 2021). Second, with respect to his heat concerns, the uncontested summary judgment evidence reveals that medical personnel determined that he does not have heat sensitivities and do not give him a "Heat Sensitivity Score," (Dkt. #105-1, pg. 40; 51). Moreover, in her affidavit, Dr. Adams explains that "there is no medical record documentation of Mr. Baughman having experienced any type of heat illness," (Dkt. #52, pg. 10). The evidence reveals that Baughman was specifically designated without a heat score. Given the lack of a heat score, Baughman fails to demonstrate how any Defendant knew that he was at risk of heat illness, but then disregarded that risk. This claim should be dismissed.

Baughman insists that his medical problems affect his heat tolerance and ability to thermoregulate, (Dkt. #122, pg. 19). But he provides no evidence of this; Baughman's insistence that the heat affects his health because of his various illnesses and prescribed medications is insufficient, as he failed to show through evidence *how* his various medical conditions impair his ability to thermoregulate such that air conditioning or a prison transfer is required. *See Taylor v.*

*Collier*, 2019 1383021, at *7 (S.D. Tex. Mar. 26, 2019) ("Simply put, Taylor's conclusory allegation that the heat affects his health is insufficient to defeat summary judgment on his Eighth Amendment claims.").

Finally, to the extent that Baughman disagrees with medical personnel that he does not have "heat-sensitivities" or a heat score, such are mere disagreements with medical determinations that do not amount to deliberate indifference. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."); *Gobert*, 463 F.3d at 346 (mere disagreement with a course of treatment or dissatisfaction with medical treatment does not constitute deliberate indifference under the Eighth Amendment). His disagreement with medical treatment or diagnoses likewise do not state a claim under the ADA or the RA. *See Whetstone v. Hall*, 2018 WL 1022586, at *2 (N.D. Miss. Feb. 22, 2018) ("The ADA and RA exist to protect individuals from being discriminated against because they have disabilities; they do not exist to challenge a person's treatment for a disability.").

Simply because Baughman experiences hot temperatures while imprisoned does not mean that Defendants were deliberately indifferent to his health and safety. As mentioned, even if prison officials' heat-mitigation strategies are inept or ineffective such that Baughman still experiences extreme temperatures, such does not constitute deliberate indifference.  Because prison officials employ extensive heat-mitigation strategies at the Powledge Unit and the competent summary judgment evidence shows that Baughman has not been deemed "heat sensitive" by medical personnel, he has not shown that any Defendant acted with deliberate indifference.  On this record, Baughman failed to show a genuine issue of material fact that Defendants are subjecting him to an unreasonable and unconstitutional risk of serious damage to his health through excessive temperatures.

### 2. ADA

Baughman alleges that for purposes of both the ADA and the RA, he is "a qualified individual regarded as having a physiological or mental impairment that substantially limits one or more of his major life activities," (Dkt. #122).

As an initial matter, neither the ADA nor the RA permit individual capacity claims or damages. *See* 42 U.S.C. §§ 1213(1)(B), 12132 (defining public entity to only include "any department, agency, … or other instrumentality of a State); *Martinez v. City of Buda, Tex.*, 2018 WL 837609, at *6 (W.D. Tex. Feb. 13, 2018) (collecting cases holding that individual defendants cannot be sued for violating the ADA); *Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999). Therefore, to the extent that Baughman sues any state official in an individual capacity, such claim should be dismissed.

The ADA and the RA are judged and evaluated under the same legal standards, and the same remedies are available under both. *Valentine*, 993 F.3d at 289 (citing *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010)). To show discrimination under the ADA, a plaintiff must prove:

> (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability.

*Id.*; *see also Smith v. Harris Cnty., Tex.*, 956 F.3d 311, 317 (5th Cir. 2020). The Supreme Court has held that modern prisons conduct many "services, programs, or activities" that confer "benefits" on prisoners—such as recreational activities, medical services, and vocational programs. *Pa. Dep't. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

Moreover, the ADA and RA "impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals." *Bennet-Nelson v. La. Bd. of Regents*, 431

F.3d 448, 454 (5th Cir. 2005). In order to prevail on a claim concerning alleged failure to accommodate, the plaintiff must prove (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations. *See Smith*, 956 F.3d at 317 (citing *Ball*, 792 F.3d at 596). The entity must understand the limitations a plaintiff experienced as a result of his disability; the burden is on the plaintiff to identify the disability, the limitation, and to request accommodation in "direct and specific" terms. *See Valentine*, 993 F.3d at 290;

Even if a plaintiff demonstrates the failure to accommodate, or even disability-discrimination, he must show intentional discrimination. *See Smith*, 956 F.3d at 318. Deliberate indifference does not suffice. *Id.*; *see also Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 575 (5th Cir. 2002) ("[I]n order to receive compensatory damages for violations of the Acts, a plaintiff must show intentional discrimination."); *Douthit*, 2022 WL 5249152, at *2 ("To recover compensatory damages under the ADA, a plaintiff must make a showing of intentional discrimination.")

Baughman has not satisfied any of the required standards. First, the competent summary judgment evidence does not show that Baughman is a qualified individual with a disability. A "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

Baughman contends that he is disabled because of his obesity. Specifically, he argues that "severe obesity, which has been defined as body weight more than 100% over the norm, is clearly an impairment," and that Dr. Adams admits that his obesity significantly impaired a major life activity—namely, his "ability to stand and walk," requiring use of a wheelchair, (Dkt. #122, pg. 4). A close review of Dr. Adams's affidavit reveals no such statement, (Dkt. #52, pg. 5-18).

22

Moreover, Baughman misreads *McCollum v. Livingston*. While Baughman contends that McCollum held that the "plaintiff was a qualified individual under the ADA based solely on his morbid obesity," in fact, the district court there found that a material issue of fact existed concerning the history of plaintiff's diabetes. *See McCollum v. Livingston*, 2017 WL 608665, at *33 (S.D. Tex. Feb. 3, 2017). Baughman failed to show that he is a qualifying individual under the ADA, necessarily foreclosing his ADA claims.

With respect to his claims concerning Defendants' failure to accommodate his disability through a wheel-chair accessible waiting room in the medical department and handicap showers in administrative segregation, such claims similarly fail. A prison's failure to accommodate the known limitations of persons with disabilities may constitute disability discrimination; however, a crucial element is proof of the disability and that its limitations were known by the prison. *See e.g.*, *Windham v. Harris Cnty., Tex.*, 875 F.3d 229, 235-36 (5th Cir. 2017) ("Otherwise, it would be impossible for the provider to ascertain whether an accommodation is needed at all, much less identify an accommodation that would be reasonable under the circumstances."). Mere knowledge of the disability is not enough—the "provider must also have understood the limitations the plaintiff experienced … as a result of that disability." *Id.* (internal quotations and citation omitted).

The evidence illustrates that medical officials have not determined that Baughman's medical conditions render him unable to walk—and that he was not approved for an Assistive Disabilities Services (ADS) wheelchair, (Dkt. #52, pg. 84; 85 87; 90; 92).  Baughman was issued a utility-use-wheelchair, "which is prescribed for patients who are not dependent on a wheelchair for all mobility but for whom the treating provider feels wheelchair use is needed on a limited basis," (Dkt. #52, pg. 242-243; 26). While Baughman insists that he is "ADS certified," Dr. Adams testified, and the evidence shows otherwise. Baughman was issued <u>only</u> a utility-use-wheelchair—

and the summary judgment evidence contains numerous documents showing Baughman's attempts to convince medical personnel that he required an ADS wheelchair, but medical officials repeatedly stated that he is not a candidate for an ADS wheelchair, (Dkt. #52), until January 2022, (Dkt. #52, pg. 8). Baughman has not shown that he is a qualified individual with a disability under the meaning of the ADA/RA.

Here, even if Baughman showed that he is disabled within the meaning of the ADA, he failed to demonstrate that Defendants failed to accommodate any disability. The competent summary judgment evidence reveals that Defendants employ several heat mitigation strategies and that the Powledge Unit provides "wheelchair accommodations and ADA showers," (Dkt. #52, pg. 7). The Powledge Unit accommodates disables prisoners, including those who use a wheelchair. The Supreme Court has held that if a building is older than 1992, then a public entity "may comply with Title II by adopting a variety of less costly measures, including relocating services to alternative, accessible sites and assigning aids to assist persons with disabilities in accessing services." *Tennessee v. Lane*, 541 U.S. 509, 532 (2004).

Here, the Powledge Unit was built in 1982. Accordingly, "less costly measures" utilized constitute reasonable accommodations that enable Baughman to both shower and visit the medical department. The summary judgment evidence reveals that the cells in administrative segregation, where Baughman complains, have access to running water suitable for sponge baths. The Unit has ADA showers, which Baughman admits. Baughman was provided a utility-use wheelchair and an ADS wheelchair beginning in 2022.

Furthermore, with respect to the medical department's waiting room, Baughman failed to show that Defendants failed to provide a reasonable accommodation for his medical visits. As Defendants highlight and this Court previously determined, (Dkt. #67), while the

medical department's waiting room was without room to accommodate him on two occasions, the evidence demonstrates that Baughman was seen and evaluated days later and pleaded so harm from the delay. In these ways, Baughman has failed to illustrate that Defendants failed to accommodate any disability.

Importantly, Baughman failed to show that he was intentionally discriminated against by reason of his alleged disabilities through his obesity and purported "heat-sensitivities." The Fifth Circuit has not extended ADA and RA claims to include prisoners' claims regarding poor medical treatment or inadequate facilities. *See Nottingham v. Richardson*, 499 App'x 368, 377 (5th Cir. 2012) ("The ADA is not violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. There is no evidence that the allegedly improper action of leaving Nottingham on the floor of the transit van had any connection to his alleged disability."); *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14 (1999) ("We do not in this opinion hold that the ADA imposed on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to 'provide a certain level of benefits to individuals with disabilities.").

Instead, the prisoner must show that he was treated differently because of his disability. *See Nottingham*, 499 F. App'x at 377 ("There is no indication that he was treated differently because of his disability."). Baughman offers no evidence—other than his own conclusory assertions and recitation of legal buzz words—that any Defendant discriminated against him by reason of these alleged disabilities.

Additionally, his allegations suffer from a fundamental logic problem: The nature of his complaint is that he is <u>not</u> treated differently from other prisoners because he is being housed in the same conditions (administrative segregation and the waiting room of the infirmary) that experience extreme heat. Baughman's articulation of the facts indicate that both disabled and non-

disabled prisoners are housed in the same fashion. But, where disabled and non-disabled prisoners are subjected to the same conditions, an ADA or RA claim fails. *See Tuft v. Tex.*, 410 F. App'x 770, 775 (5th Cir. 2011) ("Despite complaining about such overcrowding, Tuft did not provide any summary judgment evidence showing that he and other prisoners with disabilities were treated differently from non-disabled prisoners."); *McDonald v. Cain*, 2012 WL 3726753, at *4 n.5 (M.D. La. Aug. 13, 2012) ("The plaintiff has not alleged, however, that he and other prisoners with disabilities were treated differently from non-disabled prisoners.").

Baughman presents no evidence or facts that indicate he or other prisoners with disabilities are treated differently from those without disabilities. His claims—the failure or refusal to house disabled prisoners in air-conditioning and the failure to accommodate wheelchair-bound prisoners—are based on conditions that are applicable to every prisoner housed within the Powledge Unit, thereby negating his own insistence that he is being treated differently from other prisoners. The Seventh Circuit succinctly explained:

> [T]he act [i.e., the ADA] would not be violated by a prison's simply failing to attend to the medical needs of its prisoners. No discrimination is alleged; Bryant was not treated worse because he was disabled. . . . [H]e is not complaining of being excluded from some prison service, program, or activity, for example an exercise program that his paraplegia would prevent him from taking part in without some modification of the program. He is complaining about the incompetent treatment of his paraplegia.

*Bryant v. Madigan*, 84 F.3d 246, 248 (7th Cir. 1996).

Here, likewise, Baughman's allegations show that he was not treated worse because he has alleged "heat sensitivities" or needs a wheelchair—as all prisoners, disabled and non-disabled, are housed without air conditioning at the Powledge Unit. Similarly, both disabled and non-disabled prisoners are housed in administrative segregation cells. Such are fatal to Baughman's ADA and RA claims. *See Hale v. Harrison Cnty. Bd. of Supervisors*, 8 F.4th 399, 404 n.1 (5th Cir. 2021) ("Hale admits that the denial of his requested accommodations meant he was treated the same as

'everybody.' That admission is fatal to his discrimination claim because the ADA is not violated where the denial of an accommodation 'does not create a situation where disabled individuals ha[ve] an unequal ability to use and enjoy the facility compared to individuals who do not have a disability.'") (quoting *Providence v. Behavioral Health v. Grant Rd. Pub. Utility Dist.*, 902 F.3d 448, 459 (5th Cir. 2018)).

The meritless nature of Baughman's ADA claims is further evinced by his argument that prison officials' "remedial measures" to combat the heat inside the Powledge Unit "are not reasonable accommodation[s] for the ADA Plaintiff's disabilities, as they do not remove the substantial risk of serious harm to Plaintiff," (Dkt. #122, pg. 57). However, as explained, the Constitution does not require the elimination of all risks related to heat illnesses. *Ball*, 792 F.3d at 599 (emphasis added); *see also Garrett v. Davis*, 2016 WL 8671934, at *5 (S.D. Tex. Dec. 9, 2016) ("In the Eighth Amendment cases, plaintiffs can only obtain a remedy that reduces the risk of harm to a socially acceptable level.") (citing *Ball*, 792 F.3d at 599). Ultimately, Baughman presented no evidence illustrating that he was discriminated against by reason of his alleged disabilities. He does not have the right to an accommodation of his preference. *See Campbell v. Lamar Institute of Tech.*, 842 F.3d 375, 379-80 (5th Cir. 2016). Defendants' motion for summary judgment on the merits of these claims should be granted, and all of Baughman's ADA and RA claims should be dismissed.

C. Qualified Immunity

Defendants seek qualified immunity. The defense of qualified immunity protects government officials performing discretionary functions from "liability for civil damages insofar as their conduct does not violate clearly established rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Lytle v. Bexar County, Tex.*, 560 F.3d

404, 409 (5th Cir. 2009).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).  "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted).  "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

To demonstrate the inapplicability of the qualified immunity defense, the plaintiff must satisfy a two-prong test. *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  The first prong is whether "the challenged conduct, viewed in the light most favorable to the plaintiff, would actually amount to a violation of [constitutional or] federal law." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (citation omitted). The second is "whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004) (citations omitted).  A court may consider the two-pronged inquiry in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

When applying the second prong, the court examines whether "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 563 U.S. at 741 (internal alterations and quotation marks omitted). The Fifth Circuit has observed that an official:

> does not lose qualified immunity merely because a certain right is clearly established in the abstract.  It is clearly established that the government may not deny due process or inflict cruel and unusual punishments, but those abstract rules give officials little practical guidance as to the legality of particular conduct.  Qualified immunity should not be denied unless the law is clear in the more particularized sense that reasonable officials should be on notice that their conduct is unlawful.

*Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (internal quotation marks omitted).

Here, Baughman failed to establish a constitutional violation. He therefore failed to clear the first hurdle. Moreover, even if he had alleged a constitutional violation, he failed to show that any Defendant acted unreasonably. Baughman failed to prove that he is a qualifying individual for purposes of the ADA. Moreover, there is no constitutional right to an air-conditioned prison unit or housing, the uncontested summary judgment evidence shows that he is not "heat sensitive," he failed to show any discrimination by reason of his alleged disability. Furthermore, the evidence demonstrates that prison officials employ several heat-mitigation strategies and procedures—which he has not shown are insufficient. Because Baughman has not identified a constitutional violation, Defendants are entitled to qualified immunity.

To the extent that Baughman sues Defendants for damages in their official capacities, the Court notes that the Eleventh Amendment bars recovering section 1983 money damages from officers in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (explaining that the Fifth Circuit has "twice held that the Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity."). Morris's claims against Defendants in their official capacities are without merit and will be dismissed.

## VII. Conclusion

Baughman's claim that Defendant Bingham deployed excessive force through the use of excessively tight restraints/handcuffs fails to state a claim upon which relief may be granted. The use of tight restraints, without more, does not give rise to a claim of excessive force. His claims against Defendant Bingham should be dismissed. Moreover, Baughman's claims concerning heat and the ADA should be dismissed—as he has not shown a dispute of material fact. He has neither shown that he is a qualified individual within the meaning of the ADA nor that any Defendant intentionally discriminated against him because of his alleged disability. Even if he had shown that

he is a qualifying individual, Baughman is not entitled to the accommodation of his choice. The Constitution does not require the elimination of all risks. As Baughman presented no constitutional violation, Defendants are entitled to qualified immunity.

<u>RECOMMENDATION</u>

For these reasons, it is recommended that Baughman's claims of excessive force against Defendant Bingham should be dismissed, with prejudice, for the failure to state a claim upon which relief may be granted. Defendants' motion for summary judgment, (Dkt. #104), should be granted—and the remaining claims in this lawsuit be dismissed.

Within fourteen (14) days of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 7th day of February, 2024.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE